UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TWILA SMITH, et al.,**<br><br>Plaintiffs,<br><br>v.<br><br>**ERGO SOLUTIONS, LLC, et al.**<br><br>Defendants. | Civil Action No. 14-382 (JDB) |

## MEMORANDUM OPINION

Twila Smith and several of her former co-workers have brought a putative class action against their sometime-employer, Ergo Solutions. The salacious facts alleged in the complaint are countered by the driest of oppositions: Ergo—and two of its owners, as named defendants—contend that the complaint was not served on time, that certain claims are barred by the statute of limitations, that various defenses and estoppels bar individual plaintiffs, and that the motion for class certification is untimely. Having waded through this morass of procedural arguments, the Court finds that nearly all of the plaintiffs are entitled to move forward, at least pending some discovery. Class certification will be denied for now—but limited discovery is permitted to determine whether the injuries alleged by the plaintiffs affected a wider scope of Ergo employees.

## BACKGROUND

The named plaintiffs in this purported class action allege a satyric and lecherous hostile work environment at Ergo Solutions. In general, they allege: "Ergo created a corporate and organizational culture where the environment not only allowed and tolerated sexual harassment but also one in which the environment promoted and perpetrated sexual harassment." Am. Compl.

1

[ECF No. 5] ¶ 20. And "[t]here were constant rumors about untoward actions by the owners involving female employees." Id. Specifically: Ergo CEO and owner George Brownlee, id. ¶ 13, sent employee Twila Smith a sexually explicit video, id. ¶ 23. He propositioned her for sex, id. ¶¶ 23, 26, 29; "forced a kiss on her lips," id. ¶ 26; and "exposed his genitals and masturbated to conclusion" in front of her, id. ¶ 27.

But there's more, as alleged. Brownlee discussed other employees' physical attributes with plaintiff Deirdra Gilliam, id. ¶ 39, before focusing on her own. He texted her graphic pictures, id. ¶ 41, and initiated sex in the office, id. ¶ 42. Brownlee made similar sexual advances to plaintiff Alexis Dixon, id. ¶ 54, escalating to inappropriate touching, id. ¶ 58, and an incident where "Brownlee even came to her office with [Chief Information Officer and owner Jason] Henderson and physically touched her breasts in the presence of Mr. Henderson and attempted to make her perform oral sex on him while Mr. Henderson looked on," id. ¶ 60. Employee Nicola Cherichel, too, was the recipient of Brownlee's inappropriate touching—and more. Id. ¶ 62. And Henderson's sexual advances, inappropriate touching, and requests for sex were also de rigueur for employee Lori Robinson. Id. ¶ 65. These women feared the consequences of complaining, or found it inefficacious. See id. ¶¶ 27, 40, 48, 49, 55, 58, 59, 60. And they allege that their experiences at Ergo were not unique. See id. ¶ 68 ("There are numerous [up to 120] other female employees or independent contractors who have been victims of sexual advances, invitations, requests to date, inappropriate touching[, and] demands for oral sex and sexual intercourse . . . .").

The plaintiffs filed their complaint against Ergo, Brownlee, Henderson, and their insurance company[1] on March 10, 2014. No summons was issued. The plaintiffs filed an amended

---

[1] The plaintiffs have not served the insurance company, and the company has not participated in the case at all thus far. (Though Ergo's counsel originally entered an appearance on behalf of all defendants, see Notice of Appearance [ECF No. 3], he later clarified that he represents only Ergo, Brownlee, and Henderson, see Notice to Clarify [ECF No. 14].) As over a year has passed without any attempt to serve the insurance company, the Court will

complaint (alleging various counts of hostile work environment under both Title VII and the D.C. Human Rights Act, as well as quid pro quo sexual harassment under the latter) on July 9, 2014. This amended complaint was served days later. The defendants (minus the insurance company) moved to dismiss the suit shortly thereafter. Presumably spurred on by the motion to dismiss, plaintiffs filed a motion to certify the class on August 8, 2014. Both motions—as well as Ergo's motion for sanctions—are now pending before the Court.

## **LEGAL STANDARD**

"A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint." Lewis v. Dist. of Columbia, 535 F. Supp. 2d 1, 8 (D.D.C. 2008). To pass the test, "the plaintiff must allege a plausible entitlement to relief, by setting forth any set of facts consistent with the allegations." Id. at 9 (internal quotation marks and citation omitted). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

At this stage, the Court "must treat the complaint's factual allegations—including mixed questions of law and fact—as true and draw all reasonable interferences therefrom in the plaintiff's favor." Lewis, 535 F. Supp. 2d at 9. But the Court "need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations." Id. And "[a] defendant may raise the affirmative defense of a statute of limitations via a Rule 12(b)(6) motion when the facts giving rise to the defense are apparent on the face of the complaint." Nat'l R.R. Passenger Corp. v. Lexington Ins. Co., 357 F. Supp. 2d 287, 292 (D.D.C. 2005).

---

dismiss the case as to that defendant. Thus, all references to "defendants" throughout the opinion refer to Ergo, Brownlee, and Henderson.

## ANALYSIS

Defendants have moved to dismiss the amended complaint on the grounds that (for Title VII purposes) it was served too late, and that (for DCHRA purposes) it is barred by the statute of limitations. Failing that, defendants argue that each of the women named in the complaint cannot proceed. The Court agrees that dismissal is warranted as to one plaintiff, but finds that dismissal of the other plaintiffs' claims is inappropriate at this stage. Finally, the Court denies plaintiffs' motion for class certification at this time, and will permit further discovery on that score.

### I.   SERVICE OF COMPLAINT[2]

Defendants advance, foremost, a highly technical argument—but it boils down to an assertion that they received plaintiffs' summons several days late. Under Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The plaintiffs narrowly missed that 120-day deadline. They filed their original complaint on March 10, 2014, but neglected to request a summons. The 120-day period to issue a summons, then, expired on July 8, 2014. But instead of serving the defendants, plaintiffs filed an amended complaint on July 9, the summons for which was issued on July 11 and served on July 15.[3] In short, the defendants received the summons and amended complaint

---

[2] The defendants recycle a great deal of their arguments regarding service of the complaint and the DCHRA statute of limitations from similar motions filed in Robinson v. Ergo Solutions, No. 14-379 (D.D.C.). The Court's disposition of the arguments here mirrors the decision issued today in Robinson.

[3] The timeline here is a bit complicated. When plaintiffs filed their amended complaint on July 9, 2014, they attached a requested summons that listed all four defendants in a single document. See Att. to Am. Compl. [ECF No. 5-1]. This summons was issued that same day. See Summons [ECF No. 6]. But the next day, July 10, the Court realized the mistake: the defendants cannot all be combined into one summons as they had been initially; rather, plaintiffs must request a separate summons for each defendant. See July 10, 2014 Notice of Corrected Docket Entry. Plaintiffs filed those separate requests that day. See Requests [ECF Nos. 7–10]. And those four individual summonses were issued the next day, July 11. See Summons [ECF No. 11].

From here, there was a flurry of service activity. Ergo appears to have been served four separate times: through its counsel on both July 10, see Aff. [ECF No. 12-3], and July 15, see Aff. [ECF No. 19-1], and through Henderson on both July 12, see Aff. [ECF No. 12-2], and July 19, see Return of Service/Aff. [ECF No. 19]. (The earlier two dates appear to involve the earlier, combined summons that had been issued and then recalled.) Henderson

immediately after the amended complaint was filed, and only a few days after the service deadline for the original complaint.

The defendants attach greater importance to this problem than one might typically expect. They point out that the original complaint was never served at all. Thus, the contention goes, the amended complaint cannot relate back to it. And the amended complaint, standing alone, was not filed within ninety days of the right-to-sue letter, as required. See 42 U.S.C. § 2000e-5(f)(1). The syllogism, as defendants see it, is that failure to ensure service of the summons a few days sooner sinks the case entirely.

Technically, defendants have a point: the original complaint was never served. But had the amended complaint (and its related summons) been filed even days earlier, there would be no problem. In their haste to rid themselves of this suit, defendants ignore the broader directive of Rule 4(m) that the Court is not required to dismiss the action entirely. Instead, it has discretion to "order that service be made within a specified time." Fed. R. Civ. P. 4(m). Were service not already effected here, the Court would be inclined to "order that service be made within a specified time"—a time that would, with certainty, have exceeded the short period at issue here.[4] Under these circumstances, the Court does not find a rigid application of Rule 4(m) to be an appropriate means for deciding this case. See Mann, 681 F.3d at 375 ("The Advisory Committee note for Rule

---

was served twice: on July 15, through his counsel, see Att. to Return of Service/Aff. [ECF No. 20-1], and personally on July 19, see Return of Service/Aff. [ECF No. 20]. And Brownlee was served through his counsel, just once, on July 15. See Return of Service/Aff. [ECF No. 18].

[4] In general, Federal Rule of Civil Procedure 6(b) mandates that "in the absence of any motion for an extension, the trial court has no basis on which to exercise its discretion to grant an extension after a filing deadline has passed." Mann v. Castiel, 681 F.3d 368, 375 (D.C. Cir. 2012) (internal quotation marks, citation, and alterations omitted). But this Circuit has not yet determined whether "this principle applies here, where a rule mandated that the district court exercise its discretion." Id. In any event, the Court "think[s] the motion requirement could have been deemed satisfied by [plaintiffs'] [m]emorandum in [o]pposition." Yesudian ex rel. United States v. Howard Univ., 270 F.3d 969, 971 (D.C. Cir. 2001).

4(m) instructs that the district court has discretion to extend the time for effecting and filing proof of service even if the plaintiff fails to show 'good cause.'"). [5]

Defendants' argument concerning service of the original complaint is not without support. Other courts in this circuit have, for instance, expressed concern that permitting service of an amended complaint to toll a running clock "would require that the statute of limitations be tolled indefinitely when a complaint is filed, even if service is not made. Thus, plaintiffs could file an initial complaint, never even attempt to serve it or provide the prospective defendants any notice, and at any later time file an amended complaint that is served within 120 days." Rudder v. Williams, --- F. Supp. 3d ---, 2014 WL 2586335, at *4 (D.D.C. June 10, 2014). But this Court finds that—although this danger may be real in some cases—a week-long extension in this case is hardly the grand marshal to a parade of horribles. The Court therefore exercises its discretion to grant an extension of time to effect service, and consequently denies defendants' motion to dismiss on that ground.

## II.   DCHRA STATUTE OF LIMITATIONS

Defendants also argue that the DCHRA claims are barred by the statute of limitations. The DCHRA does contain a one-year statute of limitations. See D.C. Code § 2-1403.16(a). And, at first blush, plaintiffs have not met it: the last event alleged in the amended complaint occurred in July 2010—and Smith did not file her first complaint in court until March 2014, nearly four years later.

---

[5] "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect, it is clear that excusable neglect is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." In re Vitamins Antitrust Class Actions, 327 F.3d 1207, 1209–10 (D.C. Cir. 2003) (internal quotation marks, citation, and alteration omitted). The Court finds just such excusable neglect here.

But the statute of limitations also provides for tolling: "The timely filing of a complaint with the Office [of Human Rights], or under the administrative procedures established by the Mayor . . . shall toll the running of the statute of limitations while the complaint is pending." Id. The D.C. Court of Appeals has explained that a plaintiff's "timely filing with the EEOC, of which DC [Office of Human Rights] promptly received a copy under the existing agreement between the federal and local agencies, suffice[s] to toll the limitations period for filing in court." Estenos v. PAHO/WHO Fed. Credit Union, 952 A.2d 878, 886 (D.C. 2008); see also Zelaya v. UNICCO Serv. Co., 587 F. Supp. 2d 277, 283 (D.D.C. 2008) (recognizing the Estenos holding).

Smith filed an EEOC charge on December 16, 2010—for which she received a notice of right to file suit on December 9, 2013. See Pl.'s Opp'n [ECF No. 21] at 7. Thus, accounting for tolling, she filed well within the one-year DCHRA deadline when this action was initiated on March 10, 2014.[6]

### III.   INDIVIDUAL PLAINTIFFS

A.   SMITH AND GILLIAM

Under Title VII, "an employer is vicariously liable for actionable discrimination caused by a supervisor, but subject to an affirmative defense looking to the reasonableness of the employer's conduct as well as that of a plaintiff victim." Faragher v. City of Boca Raton, 524 U.S. 775, 780 (1998). Defendants[7] raise such a defense against Smith and Gilliam's claims of sexual harassment and hostile work environment.

---

[6] Ergo has also moved for sanctions under Federal Rule of Civil Procedure 11, arguing that plaintiffs' position on the DCHRA statute-of-limitations issue is legally frivolous. See Def.'s Mot. for Sanctions [ECF No. 25] at 1. Given that the Court largely agrees with plaintiffs' positions, it will not award sanctions. Moreover, the Court notes that sanctions are particularly inappropriate in this case, where Ergo has ignored legal authority on the statute of limitations question that runs counter to its positions.

[7] As the Faragher defense goes to vicarious liability, it is not available to Brownlee and Henderson, who are alleged to have perpetrated discrimination themselves directly.

The Faragher defense "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 807.  The Court need not address the first prong here—in any event, it would be premature, in the absence of sufficient discovery regarding Ergo's sexual harassment policy—because Smith and Gilliam quite reasonably declined to "take advantage" of traditional avenues.  The harassment Smith complains of (and nearly all for Gilliam) was suffered at the hands of Brownlee—one of Ergo's owners and its CEO.  Am. Compl. ¶ 13.  Absent evidence to the contrary, Smith's lack of "confidence that the company policy on sexual harassment would be followed by the company," id. ¶ 24, and Gilliam's fear of "creating conflict with the CEO," id. ¶ 40, were entirely reasonable.[8]  See Faragher, 524 U.S. at 789 (collecting cases where vicarious liability need not be proven, as company owners and presidents created the hostile work environment themselves); see also Am. Compl. ¶ 68 ("Ergo owners, all of whom doubled as senior managers, . . . made a practice of informing women that they could do what they wanted because they were owners of the company.").[9]  At this stage, nothing suggests that the Faragher defense is appropriate as to Smith and Gilliam's claims.

---

[8] Gilliam did report an incident with one of her co-workers.  See Am. Compl ¶ 45.  A co-worker, however, presents a different situation from a CEO and company owner.  And even then, "nothing . . . was done about it" (though the co-worker was later laid off).  Id.  Thus, Gilliam acted reasonably in believing that a complaint against an owner of the company would be even less likely to generate action.

[9] Defendants also contend that Gilliam cannot establish a hostile work environment claim because she was jealous that Brownlee was involved in sexual relationships with other employees.  In their view, "[a] truly[] sexually harassed person would not be jealous of another employee's sexual relationship with the harasser."  Defs.' Mot. to Dismiss [ECF No. 13] at 9.  This argument barely warrants a footnote.  Defendants grossly overread the amended complaint.  See Am. Compl. at ¶ 43, 44.  And, at the risk of stating the obvious, the Court points out that even if Gilliam were jealous, that does not undermine her allegations that the work environment at Ergo was "both objectively and subjectively offensive."  Faragher, 524 U.S. at 787.  Indeed, the allegation that Brownlee was sexually active with multiple employees simultaneously only serves to strengthen Gilliam's claim that all was not well at Ergo Solutions.

B. ROBINSON AND CHERICHEL

Robinson and Cherichel have filed individual actions against Ergo as well as joining this class action. Defendants believe that Federal Rules of Civil Procedure 18, 19, and 23 "preclude a [p]laintiff from filing an individual lawsuit and joining a class action." Defs.' Mot. at 12. The Court is unable to find that proposition in any of the rules cited by defendants. See Fed. R. Civ. P. 18 (permitting, but not requiring, joinder of "as many claims as [a party] has against an opposing party" in one suit); Fed. R. Civ. P. 19 (requiring joinder of parties, not claims); Fed. R. Civ. P. 23 (merely setting forth the requirements to bring a class action).

Defendants' position is not, however, entirely without merit—though not for the reasons given. See Stanton v. Dist. of Columbia Ct. of App., 127 F.3d 72, 77 (D.C. Cir. 1997) (noting a court's ability to consider res judicata sua sponte). "Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." Taylor v. Sturgell, 553 U.S. 880, 892 (2008) (internal quotation marks and citation omitted). And issue preclusion "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." Id. (internal quotation marks and citation omitted). Robinson's allegations in the amended complaint here relate to the licentiousness of owner and Chief Information Officer Jason Henderson, who, it is alleged, repeatedly made sexual advances toward her and other female employees. See Am. Compl. ¶ 65–67. These allegations bear a remarkable similarity to those in Robinson's first action for hostile work environment. See Robinson v. Ergo Solutions, LLC, No. 12-147 (D.D.C.), Compl. [ECF No. 1]. And Robinson already won that case. See id. March 4, 2014 Order [ECF

9

No. 32] (granting Robinson's motion for default judgment). Robinson is not entitled to recover twice for the same claim, based on the same facts.[10]

Cherichel has a separate action pending before this Court, claiming sexual harassment and hostile work environment under the DCHRA. See Cherichel v. Ergo Solutions, No. 12-1452 (D.D.C.). The allegations in that action—like Cherichel's here—focus on Brownlee's sexual pursuit of Cherichel, up to and including rape. Compare id. Am. Compl. [ECF No. 34], with Smith v. Ergo Solutions, No. 14-382, Am. Compl. ¶¶ 61–64. Similar, certainly. But this Court has, today, dismissed Cherichel's separate action as barred by the statute of limitations. The parties may file further briefing as to whether that dismissal constitutes a final judgment on the merits requiring dismissal of Cherichel from this suit as well. See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995) ("The rules of finality, both statutory and judge[-]made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits." (in the context of reopening judgments)); Smith v. Dist. of Columbia, 629 F. Supp. 2d 53, 58 (D.D.C. 2009) (holding that a dismissal based on statute of limitations constitutes a final judgment in the context of res judicata).

C. DIXON

Defendants raise a similar issue with Dixon's claims: she already settled her case four years ago. See Ex. 2 to Defs.' Mot. to Dismiss [ECF No. 13-3]. Plaintiffs contend that the settlement agreement supplied by defendants is not properly before the Court. Technically, this is correct:

---

[10] Alhough Robinson has named additional defendants in this action, "when the plaintiff has accepted satisfaction in full for the injury done h[er], from whatever source it may come . . . [s]he is so far affected in equity and good conscience, that the law will not permit h[er] to recover again for the same damages." Kassman v. Am. Univ., 546 F.2d 1029, 1033 (D.C. Cir. 1976) (internal quotation marks and citation omitted).

Robinson has also filed a separate lawsuit, Robinson v. Ergo Solutions, LLC, No. 14-379 (D.D.C.), that is currently pending before this Court. That suit, however, proceeds on a claim of retaliation, not hostile work environment.

"[c]ourts take judicial notice of matters of common knowledge," Ohio Bell Tel. Co. v. Pub. Utils. Comm'n of Ohio, 301 U.S. 292, 301 (1937), but a confidential settlement agreement is hardly that. Thus, the Court cannot consider the exhibit without converting this motion to one for summary judgment, and it is loath to do so at this stage. Absent some explanation from plaintiffs, however, if this issue is later raised on summary judgment, the Court may dismiss the case as to Dixon. And if it transpires that plaintiffs unreasonably litigated this issue—knowing full well that Dixon had already settled her claims—the Court will entertain a motion for sanctions on this point.

D. SUMMARY AS TO INDIVIDUAL PLAINTIFFS

In sum: defendants' motion to dismiss will be granted only as to Robinson. Smith's, Gilliam's, Cherichel's, and Dixon's claims may all proceed.

IV. CLASS CERTIFICATION

Defendants contend that plaintiffs' motion for class certification is untimely. Local Civil Rule 23.1(b) provides: "Within 90 days after the filing of a complaint in a case sought to be maintained as a class action, . . . the plaintiff shall move for a certification under Rule 23(c)(1) . . . ." That rule "ha[s] been strictly applied in this Circuit." Howard v. Gutierrez, 474 F. Supp. 2d 41, 53 (D.D.C. 2007). As this Court has held, the ninety-day deadline is measured from the filing of the first complaint alleging a class action—not from the subsequent filing of an amended complaint. See id. at 54–55.

Plaintiffs filed their motion for class certification on August 8, 2014—nearly five months after filing the initial complaint. Too late by half. But plaintiffs argue that they were not terribly late, and that there was no prejudice—in short, that their errors constitute excusable neglect.[11]

---

[11] As noted above, under Federal Rule of Civil Procedure 6(b), "post-deadline extensions may be granted only for cause shown and upon motion." Smith v. Dist. of Columbia, 430 F.3d 450, 456 (D.C. Cir. 2005) (internal quotation marks and citation omitted). "Any post-deadline motion must contain a high degree of formality and precision, putting the opposing party on notice that a motion is at issue and that he therefore ought to respond." (cont.)

11

As this Court observed in Howard:

> The determination of whether a party's neglect is excusable is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. The court must consider the danger or prejudice to the other party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

Id. at 55–56 (internal quotation marks, citations, and alteration omitted).

Here, plaintiffs filed their motion for class certification within thirty days of filing the amended complaint, and within sixty days of the deadline—not a de minimis delay, but hardly an egregious one either. Moreover, plaintiffs acted diligently to file the appropriate motion once they realized their error. Only a week elapsed between defendants' motion to dismiss and plaintiffs' motion to certify their class. Cf. Howard, 474 F. Supp. 2d at 56–57 (noting, with disapproval, plaintiffs' decision to wait three months to file an extension of time to move for class certification after defendant's motion to dismiss raised the untimeliness argument). And defendants have failed to point out any unfair prejudice they have suffered as a result of the delay. They complain of uncertainty regarding the number of plaintiffs, the amount of discovery, and the potential damages faced. See Defs.' Mot. to Dismiss at 11; Defs.' Opp'n to Mot. for Class Cert. [ECF No. 23] at 3. But those problems are not inherent to the delay itself. In the absence of any allegation of bad faith on the part of plaintiffs, the Court finds that the equities counsel against denying class certification on the basis of a relatively short delay alone—plaintiffs' neglect, then, is excusable. But that is not the end of the Rule 23 inquiry, and hence the Court will now turn to the motion's substance.

---

Id. (internal quotation marks and citation omitted). Courts have applied this requirement broadly, however, deeming the motion requirement satisfied by parties' memoranda. See Yesudian, 270 F.3d at 971. So too here: the Court considers plaintiffs' motion for class certification and reply thereto to satisfy the motion requirement under Rule 6(b).

12

"To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions." Richards v. Delta Air Lines, Inc., 453 F.3d 525, 529 (D.C. Cir. 2006). "That is, the proponent of certification must establish: '(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.' These four requirements are commonly referred to in shorthand as numerosity, commonality, typicality, and adequacy of representation, respectively." Daskalea v. Wash. Humane Soc., 275 F.R.D. 346, 355 (D.D.C. 2011) (quoting Fed. R. Civ. P. 23(a)).

Certification must also "be appropriate under at least one of the three categories enumerated in Rule 23(b)." Id. Here, plaintiffs rest the class action claims on Rule 23(b)(3), which requires that

> the court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to th[o]se findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

In evaluating these questions, the Court bears in mind that "Rule 23 does not set forth a mere pleading standard." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Id.

The Court finds that the plaintiffs' allegations are, at this stage, too vague to make the necessary showings. First consider numerosity: plaintiffs argue that the pattern of abusive behavior at Ergo affects all female employees and independent contractors. But they only estimate how many people fit that description: "approximately 150," not including "female employee[s] who have been victims of the conduct described . . . but who have left employment at Ergo Solutions"—who number, plaintiffs believe, at least fifty. See Pls.' Mot. for Class Cert. [ECF No. 16] at 2–3. These estimations—unsupported by any record evidence—do not "affirmatively demonstrate . . . that there are in fact sufficiently numerous parties." Wal-Mart, 131 S. Ct. at 2551. Plaintiffs must show at least a reasonable basis for their estimations. See Adair v. England, 209 F.R.D. 5, 8 (D.D.C. 2002).

Next, consider commonality and typicality. See Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n.13 (1982) ("The commonality and typicality requirements of Rule 23(a) tend to merge."). Plaintiffs fare better here, but only to a point. They raise hostile work environment claims which, if borne out, could reasonably be said to affect all women working at Ergo. See Am. Compl. ¶ 127 ("More than 120 female employees or former employees or independent contractors experienced advances and/or sexual contact at the hands of Defendant[s]. . . . Also, female employees were forced to observe and work in an environment in which the owners and senior managers pursued their female co-workers seeking sexual favors or engaging in inappropriate touching . . . ."); ¶ 129 ("Requests for sex and sexual contact either orally or with the genitals was the abusive action experienced by nearly all of the female employees or former employees or independent contracto[rs] employed at Ergo Solutions."). The conduct constituting a hostile work environment, then, is alleged to have affected every female employee, past or present.

But this bare allegation asks the Court to do rather a lot of extrapolating from the personal experiences of a handful of named plaintiffs. Indeed, "[t]he Court cannot ascertain whether the requirements of Rule 23(a) have been met from a bare list of alleged victims of discrimination at [Ergo] and the generalized allegations of the . . . Amended Complaint. Yet plaintiffs supply little else in support of their motion for class certification—not affidavits, deposition testimony, statistical evidence, or company documents—to demonstrate the requisite commonality of questions of law or fact or typicality of claims or defenses among the purported class members." Butler v. Potomac Elec. Power Co., 2004 WL 4972367, at *5 (D.D.C. Aug. 25, 2004). Moreover, the claims of female employees who experienced actual harassment are different from those who experienced only the allegedly hostile workplace environment. Hence, any problems are exacerbated for plaintiffs' quid pro quo harassment claims, which necessarily involve a more individualized experience.

That is not to say that either the scope or the pervasive nature of defendants' conduct, as alleged, should be taken lightly. These are extremely serious claims. Plaintiffs are helped along by the fact that the alleged purveyors of this hostile environment were the owners of the company, suggesting that plaintiffs' plight was not limited to one division or subclass of female employees. Cf. In re PEPCO Emp't Litig., 1992 WL 442759, at *21 (D.D.C. Dec. 4, 1992) (refusing to find a hostile work environment claim common to the subclass without evidence suggesting the defendant company's management knew of and tolerated the hostile environment). But the Court requires at least some information to determine whether plaintiffs' experiences were indeed common or typical among female Ergo employees more generally. Thus, the Court will deny class certification at this time, but finds that pre-certification discovery is warranted. See Burton v. Dist. of Columbia, 277 F.R.D. 224, 230 (D.D.C. 2011) ("Often the pleadings alone will not resolve the

question of class certification and some discovery will be warranted." (internal quotation marks, citation, and alterations omitted)).[12]

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted in part and denied in part. The motion for sanctions is denied. Plaintiffs' motion for class certification is denied at this time, but further discovery will be permitted. A separate Order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: March 30, 2015

---

[12] At this time, moreover, plaintiffs have not yet demonstrated that the adequacy of representation prong of the Rule 23(a) requirement is satisfied, either as to the named plaintiffs or as to identified class counsel.