UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TWILA SMITH, et al.,<br><br>　　　Plaintiffs,<br><br>　　　v.<br><br>ERGO SOLUTIONS, LLC, et al.<br><br>　　　Defendants. | Civil Action No. 14-382 (JDB) |

**MEMORANDUM OPINION**

Plaintiffs Twila Smith and Deirdre Osbourne have filed this action against their former employer, defendant Ergo Solutions, LLC ("Ergo"), and one of Ergo's managing partners, defendant George Brownlee, alleging sexual harassment. They seek equitable relief and damages under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the District of Columbia Human Rights Act, D.C. Code § 2-1401 et seq. Now before the Court is plaintiffs' motion to compel discovery of a report written pursuant to Ergo's internal investigation[1] of sexual harassment claims brought against defendant Brownlee by two other Ergo employees. See Pls.' Mot. to Compel [ECF No. 73]. Brownlee and Ergo assert that the report is protected by the attorney-client privilege. However, for the reasons set forth below, the Court finds that Brownlee waived any attorney-client privilege through his deposition testimony. The Court will, therefore, grant the motion to compel.[2]

---

[1] The term "internal investigation" has been used by both parties throughout this adjudication and, therefore, will be used in this opinion as well for consistency. However, technically the investigation was an "external investigation" because it was conducted by outside counsel, not by in-house counsel.

[2] Plaintiffs seek only the production of the report, not the production of any notes attached to the report.

1

## BACKGROUND

Smith and Osbourne allege that "Ergo has long subjected [them] to an abusive, offensive, humiliating and hostile environment as a result of pervasive sexual misbehavior." Third Am. Compl. [ECF No. 52] ¶ 14. They claim that "[t]he Company created a corporate culture where sexual abuse was tolerated and the objectification of women was promoted." Id. Plaintiffs specifically allege that Brownlee, one of Ergo's managing partners, engaged in egregious sexual misconduct towards plaintiffs, including sending them explicit videos and text messages, see, e.g., id. ¶¶ 18, 44, 56, 63, 66, propositioning plaintiffs for sex, id. ¶¶ 18, 25, 34, 35, 44, forcing unwanted kissing and touching onto plaintiffs, id. ¶¶ 36, 66, and "expos[ing] his genitals and masturbat[ing]" in front of Smith, id. ¶ 37.

In 2009, Ergo received complaints from two other female employees accusing Brownlee of sexual harassment and alleging claims similar to those alleged in this suit. In response, Ergo retained attorney Donald Hartman to conduct an investigation of the company and its management. As part of his investigation, Hartman created a written report of his findings and recommendations. Whether this report is discoverable is now at issue.

Brownlee mentioned this report in his deposition on September 27, 2016. See Brownlee Dep., Ex. E to Mot. to Compel [ECF No. 77], Tr. 28:5–30:20, 34:7–10. Jerry Warren, the former Human Resources Director for Ergo, also mentioned it in his deposition on September 28, 2016. See Warren Dep., Ex. A to Mot. to Compel [ECF No. 73-1], Tr. 41:21–47:2. During Brownlee's deposition, he specifically discussed the report's post-investigation recommendations, including that he stay away from the building for six months, pay a $10,000 fine, and see a therapist. See Brownlee Dep., Tr. 28:5–30:20, 34:7–10.

Defendants Ergo and Brownlee claim attorney-client privilege while plaintiffs assert that either the document is not privileged because it contains business advice rather than legal advice or, alternatively, that the privilege was waived by Warren or Brownlee during their respective depositions. After a hearing on February 13, 2017, this Court has reviewed the internal investigation report <u>in camera</u> to determine whether it is privileged and whether it must be produced to plaintiffs.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). If a party objects to the disclosure of certain documents, the requesting party may move to compel disclosure of the withheld material. Fed. R .Civ. P. 37(a). The moving party "'bears the initial burden of explaining how the requested information is relevant'" before the burden shifts to the non-moving party to "'explain why discovery should not be permitted.'" <u>See The Navajo Nation v. Peabody Holding Co.</u>, 255 F.R.D. 37, 46 (D.D.C. 2009) (quoting <u>Jewish War Veterans of the United States of America, Inc. v. Gates</u>, 506 F. Supp. 2d 30, 42 (D.D.C. 2007)). If the non-moving party is withholding documents on the grounds that they are privileged, that party "bears the burden of proving that the communications are protected." <u>In re Lindsey</u>, 158 F.3d 1263, 1270 (D.C. Cir. 1998); <u>see also</u> <u>The Navajo Nation</u>, 225 F.R.D. at 46–47.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests." <u>Id.</u> However, the attorney-client privilege is "narrowly construed by the D.C. Circuit because of its adverse effects on the full disclosure of

truth." United States v. Philip Morris Inc., 212 F.R.D. 421, 424 (D.D.C. 2002). Therefore, "[a] blanket assertion of the privilege will not suffice. Rather, '[t]he proponent must conclusively prove each element of the privilege.'" In re Lindsey, 158 F.3d at 1270 (second alteration in original) (quoting SEC v. Gulf & W. Indus., Inc., 518 F. Supp. 675, 682 (D.D.C. 1981)).

Not all communication between a client and his or her lawyer is privileged; the client must be seeking and receiving legal advice rather than solely business advice. Compare id. at 1267 ("The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services." (emphasis added)) with Neuder v. Battelle Pac. Nw. Nat. Lab., 194 F.R.D. 289, 292 (D.D.C. 2000) ("[C]ommunications by a corporation with its attorney, who is at the time acting solely in his capacity as a business advisor, would not be privileged" (emphasis added) (internal quotation marks omitted)). Although corporate investigations conducted by outside counsel often combine legal and business advice, the D.C. Circuit recognizes that "[s]o long as obtaining or providing legal advice was one of the significant purposes of the internal investigation, the attorney-client privilege applies, even if there were also other purposes for the investigation[.]" In re Kellogg Brown & Root, Inc., 756 F.3d 754, 758–59 (D.C. Cir. 2014). In addition, "[c]ommunications between a [corporate] client and its outside counsel are presumed to be made for the purpose of obtaining legal advice." United States v. ChevronTexaco Corp., 241 F. Supp. 2d 1065, 1073 (N.D. Cal. 2002) (citing United States v. Chen, 99 F.3d 1495, 1501 (9th Cir. 1996)); see also Boca Investerings P'ship v. United States, 31 F. Supp. 2d 9, 12 (D.D.C. 1998) (noting that "[b]ecause an in-house lawyer often has other functions in addition to providing legal advice, the lawyer's role on a particular occasion will not be self-evident as it usually is in the case of outside counsel").

Because not all communication between a person and a lawyer is privileged, the attorney-client "privilege applies only if the person to whom the communication was made is 'a member of the bar of a court' who 'in connection with th[e] communication is acting as a lawyer' and the communication was made 'for the purpose of securing primarily'" legal advice. In re Lindsey, 158 F.3d at 1270 (alteration in original) (quoting In re Sealed Case, 737 F.2d 94, 98–99 (D.C. Cir. 1984)). Moreover, the privilege only applies if it "has been (a) claimed and (b) not waived by the client." In re Sealed Case, 737 F.2d at 99.

To safeguard the attorney-client privilege and, therefore, keep the privilege from being waived, the client must "zealously protect the privileged materials, taking all reasonable steps to prevent their disclosure." SEC v. Lavin, 111 F.3d 921, 929 (D.C. Cir. 1997); see In re Sealed Case, 676 F.2d 793, 818 (D.C. Cir. 1982) ("Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the privilege."). "A document will be considered disclosed by a plaintiff when the defendant has learned the 'gist' of the document[]'s contents." The Navajo Nation, 255 F.R.D. at 48 (some internal quotation marks omitted); see also Malco Mfg. Co. v. Elco Corp., 307 F. Supp. 1177, 1179 (E.D. Pa. 1969) ("Once a party has made a disclosure without objection, the only question remaining is whether it constitutes a waiver . . . . Since this Court has determined that the disclosure revealed the gist of the contents of a privileged communication, such disclosure therefore constituted a [] waiver of the privilege.").

Zealously protecting privileged materials includes ensuring, by timely objection, that privileged information is not inadvertently revealed during deposition testimony. Federal Rule of Civil Procedure 30(c)(2) states that "[a]n objection at the time of the examination . . . to any . . . aspect of the deposition . . . must be noted on the record . . . . An objection must be stated concisely in a nonargumentative and nonsuggestive manner. A person may instruct a deponent

5

not to answer only when necessary to preserve a privilege." Fed. R. Civ. P. 30(c)(2) (emphasis added); see also Charles A. Wright & Kenneth W. Graham, 24 Fed. Prac. & Proc. Evid. § 5507 (1st ed. 1986) ("[T]he failure to object can . . . constitute a waiver of the privilege . . . . The privilege objection must be made before the privileged information has been revealed; this means that at a deposition a question calling for privileged information cannot be answered subject to a later judicial ruling on the propriety of the question.").

## DISCUSSION

### I. The Report Is Protected by Attorney-Client Privilege

Attorney-client privilege protects confidential communications between attorneys and clients, including internal investigation reports supplied by attorneys to their clients, when one of the significant purposes of communication is legal advice, rather than only business advice. See In re Kellogg Brown & Root, 756 F.3d at 758–59; In re Lindsey, 158 F.3d at 1267. Although plaintiffs recognize that Hartman was acting in his professional capacity as a lawyer when he conducted the investigation, and that Ergo was Hartman's client, they argue that Hartman's report consisted of primarily business advice rather than legal advice and, therefore, is not privileged.

After reviewing the report in camera, the Court concludes that the report was confidential legal advice from an attorney to a client, and therefore is protected by attorney-client privilege. The Court presumes that outside counsel is retained for legal purposes. See ChevronTexaco, 241 F. Supp. 2d at 1073. Here, the presumption is borne out by the document itself. It includes legal conclusions as to the company's exposure to liability, legal recommendations for avoiding liability from these allegations and protecting against future misconduct that could lead to new allegations, and litigation strategies relating to the sexual harassment allegations at issue at the time of the report. Thus, a "significant purpose" of the report was to provide legal advice. See In re Kellogg

Brown & Root, 756 F.3d at 759; In re Cty. of Erie, 473 F.3d 413, 419 (2d Cir. 2007) ("[L]egal advice involves the interpretation and application of legal principles to guide future conduct or to assess past conduct."). There are also several indications that the document was intended to be a confidential communication between an attorney and his clients. The report is labeled "Attorney-Client Privilege" and states that it is "[n]ot to be disseminated beyond ownership group," with Ergo's owners listed by name underneath. Thus, because the report contains primarily legal advice and was a confidential communication between an attorney and his clients, the report is privileged. See In re Lindsey, 158 F.3d at 1270.

**II.     Waiver**

Attorney-client privilege only protects information that remains confidential. Disclosure of privileged information to someone outside of the privileged relationship constitutes a waiver. See In re Sealed Case, 676 F.2d at 818. Plaintiffs argue that the attorney-client privilege over the internal investigation report was waived through disclosure by either Warren or Brownlee.

Plaintiffs maintain that Jerry Warren, Ergo's former Human Resources Director, disclosed the report's privileged information when he testified during a deposition to a conversation he had with Hartman regarding Hartman's investigatory findings. See Warren Dep., Tr. 41:21–47:2. In that deposition, Warren stated: "[Hartman] indicated that he thought that Mr. Brownlee was at fault and that because he was CEO and part owner, that there was no real consequences and that it probably would happen again." Id. at 43:2–6. However, as a former employee of Ergo, Warren was not able to waive the attorney-client privilege on behalf of the company. See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 349 (1985) ("[W]hen control of a corporation passes to new management, the authority to assert and waive the corporation's

attorney-client privilege passes as well."). Therefore, Warren's deposition testimony did not waive attorney-client privilege.

Plaintiffs also contend that Brownlee waived the privilege when he testified, without objection, to the report's specific recommendations during his deposition. Unlike Warren, Brownlee, as part-owner and managing partner of Ergo, has the authority to waive attorney-client privilege on behalf of Ergo. See id. at 348 ("[T]he power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."). During Brownlee's deposition, the following exchanges took place:

> Q: Can you describe for the record what the recommendations were [of the investigation]?
> A: That I stay away from the building for six months.
> . . .
> A: I went with the recommendations and I followed it. And I had to pay a fine.
> Q: Okay. What was the fine?
> . . .
> A: I think it might be $10,000.
> . . .
> A: I've gone to a therapist. But that was—oh, that was under the recommendation of the internal investigation.

See Brownlee Dep., Tr. 29:8–11, 29:18–19, 30:3, 34:8–10. Brownlee's attorney did not present any objection to discussing the content of the report. The purpose of Hartman's report was primarily to provide legal advice regarding the recent sexual harassment allegations. By discussing Hartman's specific recommendations—that Brownlee stay away from Ergo for six months, pay a $10,000 fine, and see a therapist—Brownlee revealed Hartman's key conclusions and thus disclosed the "gist" of the report. See The Navajo Nation, 255 F.R.D. at 48, Malco Mfg., 307 F. Supp. at 1178. This, in turn, waived the attorney-client privilege that would have otherwise been afforded to the report. See Fed. R. Civ. P. 30(c)(2); 24 Fed. Prac. & Proc. Evid. § 5507. Brownlee, on behalf of himself and Ergo, cannot reveal important conclusions from the report yet

continue to maintain that the report itself is privileged.  Hence, the Court concludes that Brownlee waived attorney-client privilege for the internal investigation report.

## **CONCLUSION**

For the reasons set forth above, the Court will grant plaintiffs' motion to compel discovery of the internal investigation report.  A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:  June 20, 2017