# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TWILA SMITH, <br><br> Plaintiff, <br><br> v. <br><br> ERGO SOLUTIONS, LLC, et al. <br><br> Defendants. | Civil Action No. 14-382 (JDB) |

## MEMORANDUM OPINION

Plaintiff Twila Smith alleges that she endured sexual harassment at her former place of employment, Ergo Solutions, LLC. A jury trial on her claims will commence on September 18, 2019. Before the Court now are [140] defendants' second motion in limine, [146] defendants' third motion in limine, and [145] plaintiff's motion in limine.[1] For the reasons that follow, each motion will be granted.

**I. DEFENDANTS' MOTIONS IN LIMINE**

Defendants' second motion in limine seeks to exclude two witnesses, Antunesia Harris and Heather Qader, who Smith added to her witness list during the parties' pretrial conference on May 22, 2019. Defs.' 2d Mot. in Lim. [ECF No. 140] at 1. Defendants object on the grounds that these witnesses were never previously identified, notwithstanding the fact that Smith was asked in defendants' interrogatories to identify persons having knowledge or information about the facts alleged in the complaint, and that defendants had no opportunity to depose either Harris or Qader. Id. Smith responds that Harris and Qader will offer relevant testimony about matters about which

---

[1] The Court resolved defendants' first motion in limine in an order on June 5, 2019.

1

they have personal knowledge and that defendants never inquired during discovery "about witnesses regarding compensatory damages." Opp'n to Defs.' 2d Mot. in Lim. [ECF No. 156] at 2–5. Smith also offers to "arrange for [the] deposition of at least one" of the proposed witnesses before trial in September. Id. at 4.

Parties generally have an obligation—"without awaiting a discovery request"—to "provide to the other parties . . . the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A). In addition, a party "who has made a disclosure under Rule 26(a) . . . [or] has responded to an interrogatory . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). If a party fails to identify a witness as required in Rule 26(a) or 26(e), "the party is not allowed to use that . . . witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Smith had an obligation to identify these witnesses prior to the pretrial conference. Under Rule 26(a), Harris and Qader should have been disclosed as "individual[s] likely to have discoverable information" that Smith expected to use to support her claims. Smith also should have disclosed Harris and Qader as potential fact witnesses in response to defendants' first interrogatory, which asked Smith to "[i]dentify each person whom you believe has knowledge or information relevant to the subject matter of this action or the facts alleged in the Complaint." Pl.'s Resp. to Def[s].' 1st Set of Interrogs., Ex. 1 to Defs.' 2d Mot. in Lim. [ECF No. 140-1], at 4. And even if Smith was not aware that Harris and Qader had relevant knowledge or information when she made her initial disclosures or responded to defendants' interrogatories, she nevertheless had an obligation to "supplement or correct" this information "in a timely manner" under Rule

2

26(e). Orally adding Harris and Qader to Smith's witness list during the parties' pretrial conference on the eve of trial does not constitute a "timely" correction. In addition, Smith's failure to identify these witnesses was neither substantially justified nor harmless. Allowing the witnesses to testify without first permitting defendants an opportunity to depose them would be prejudicial to defendants. At the same time, the Court will not reopen discovery—which spanned more than a year—to permit last-minute depositions of these last-minute witnesses. The Court finds that, pursuant to Rule 37(c)(1), Smith has failed to properly and timely identify these witnesses and she therefore may not use either witness to supply evidence at trial. Accordingly, defendants' second motion in limine is granted.

Defendants' third motion in limine seeks to include Brook Cawley on defendants' witness list. Defs.' 3d Mot. in Lim. [ECF No. 146] at 1. Defendants had included Cawley on their witness list before the pretrial conference, see [Defs.'] Pre-Trial Statement ("Defs.' Pretrial Stmt.") [ECF No. 130] at 7, but at the pretrial conference they stated that they would not call Cawley because of the mistaken belief that his testimony would only be relevant to former plaintiff Deirdre Osborne's now-settled claims. Defendants' third motion in limine notes that Cawley was also Smith's supervisor, and hence defendants wish to return him to their witness list. Defs.' 3d Mot. in Lim. at 1. Plaintiff has not opposed the motion. The Court concludes that Cawley was properly identified during discovery and that adding him to defendants' witness list will cause no prejudice to plaintiff because she has known about this witness and had the opportunity to depose him. Hence, defendants' third motion in limine is granted.

II.   SMITH'S MOTION IN LIMINE

Smith moves to exclude four exhibits—two emails with two attached videos—and the testimony of Olu Ezeani and Courtland Wyatt about those exhibits. Pl.'s Mot. in Lim. to Suppress

3

Video & Test. Evid. ("Pl.'s Mot.") [ECF No. 145] at 1–2. One video, titled "And You Think You Have Balls," shows a man's testicles enlarged due to a medical condition, and the other, titled "Nasty," shows a monkey urinating into its mouth. Id. at 2. The emails allegedly transmitted the videos from Smith to Ezeani, and plaintiff contends that, although Wyatt is not a listed recipient on the contested email exhibits, he also received or viewed the videos. Smith raises several grounds for excluding this evidence, but the Court's analysis will focus on whether the evidence is relevant and whether it is admissible under Federal Rule of Evidence 412. The Court finds that the evidence is relevant but that the same features that give the evidence minor probative value also require its exclusion under Rule 412.

### A. Relevance Objections

"Evidence is relevant if . . . it has any tendency to make a fact" "of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401. To be relevant, "evidence need not be dispositive"; rather, "it must merely cross the low threshold prescribed by Rule 401." United States v. Slatten, 310 F. Supp. 3d 141, 145 (D.D.C. 2018). Irrelevant evidence is inadmissible, and relevant evidence is admissible unless specific grounds for exclusion apply. See Fed. R. Evid. 402.

Smith argues that the exhibits and testimony are irrelevant. See Mem. of P. & A. in Supp. of Pl.'s Mot. in Lim. to Suppress Video & Test. Evid. ("Pl.'s Mem.") [ECF No. 145] at 4–5. In response, defendants assert that the emails and videos are "relevant and probative" as to "whether the alleged harassment against Ms. Smith was unwelcome." See Defs.' Opp'n to Pl.'s Mot. [ECF No. 151] at 1–2. The same goes, they argue, for the testimony on the subject of those exhibits: Ezeani and Wyatt each plan to testify that the emails and videos in defendants' exhibits 1–4 exemplified the "types of sexual references . . . that . . . Smith would send to" them while employed

at Ergo, Defs.' Pretrial Stmt. at 4–5, which in turn will show that she willingly engaged in a "sexual type of horseplay at the office" and "wasn't harassed at all," Defs.' Opp'n at 3.

The Court agrees that the challenged exhibits and testimony are at least minimally relevant. The emails and videos are relevant if they "have any tendency to make" Smith's receptiveness to Brownlee's alleged misconduct "more . . . probable than it would be without the evidence . . . ." Fed. R. Evid. 401; see Defs.' Opp'n at 2–3 (identifying a central issue in the case as "whether the alleged harassment against Ms. Smith [by Brownlee] was unwelcome"); see also Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 68 (1986) ("The gravamen of any sexual harassment claim [under Title VII] is that the alleged sexual advances were 'unwelcome.'") (citation omitted). Here, neither party disputes that each video has a sexual connotation. Accepting that proposition, evidence that Smith emailed the videos, and that Brownlee was aware of that fact, helps to establish the context of the work environment and relationship between the parties—including the extent to which all parties willingly participated in sexually-charged conduct in the workplace. That context, in turn, bears on whether Brownlee's alleged misconduct was "unwelcome." See Mitchell v. Hutchings, 116 F.R.D. 481, 483–84 (D. Utah 1987) (finding that evidence of conduct contributing to the "sexual atmosphere" of the work environment, if known by the alleged harasser, is relevant to whether the alleged misconduct was "welcome"). And while it was Brownlee who allegedly performed the acts about which Smith complains, Ezeani's and Wyatt's testimony is relevant for the same reasons as the emails and videos are relevant—the testimony adds to defendants' contentions about the work-place atmosphere at Ergo and therefore could serve as some evidence that Brownlee's conduct was less likely to be unwelcome. Hence, the Court finds that the exhibits and testimony clear Rule 401's low threshold and are relevant.

## B. Rule 412 Objections

Rule 412 makes "evidence offered to prove that a victim [of alleged sexual misconduct] engaged in other sexual behavior," or "to prove a victim's sexual predisposition," inadmissible in any "civil or criminal proceeding involving sexual misconduct." Fed. R. Evid. 412(a). The rule expressly applies to evidence submitted in a "Title VII action where the plaintiff has alleged sexual harassment." Fed. R. Evid. 412 advisory committee notes to 1994 amendments. Rule 412's prohibition on admission of sexual predisposition evidence extends to "evidence that does not directly refer to sexual activities or thoughts but that the proponent believes may have a sexual connotation for the factfinder." Id. The rule provides for an exception in civil cases: "the court may admit . . . sexual behavior or sexual predisposition [evidence] if its probative value substantially outweighs the danger of . . . unfair prejudice to any party." Fed. R. Evid. 412(b)(2). The proponent of the evidence bears the burden of showing admissibility of such evidence under Rule 412(b)(2). Fed. R. Evid. 412 advisory committee notes to 1994 amendments.[2]

The challenged exhibits and testimony fall within Rule 412's ambit and thus are presumably inadmissible under Rule 412. The evidence is offered to show that Smith engaged in "lewd behavior" rife with "sexual references," Defs.' Pretrial Stmt. at 4–5, that contributed to a "sexual type of horseplay at the office," Defs.' Opp'n at 3. Defendants argue—and the discussion of why such evidence is minimally relevant emphasizes—that the value to the defense of these exhibits and testimony lies in their ability to evoke "a sexual connotation for the factfinder." Fed. R. Evid. 412 advisory committee notes to 1994 amendments. Hence, the exhibits and testimony

---

[2] As explained above, defendants concede that this evidence is intended to "prove . . . [Smith's] sexual predisposition" or "sexual behavior" within the meaning of Federal Rule of Evidence 412(a). Hence, defendants were required to file a motion in compliance with Rule 412(c)(1). Because this Court rules the evidence is ultimately inadmissible under Rule 412, defendants' failure to comply with this procedure is moot.

are evidence of a victim's sexual behavior or predisposition and are not admissible under Rule 412(a) unless the exception in Rule 412(b)(2) applies.

In weighing the exhibits' probative value against the possibility of prejudice under Rule 412(b)(2), this Court finds the exhibits and testimony inadmissible. The exhibits, even though relevant, are barely probative on the issue whether Smith and Brownlee's relationship was consensual and Brownlee's alleged conduct was welcomed. The challenged emails and videos were not directed to Brownlee, the alleged harasser. See Howard v. Historic Tours of Am., 177 F.R.D. 48, 51–52 (D.D.C. 1997) (stressing the logical barrier to finding a plaintiff's sexual conduct probative of his or her receptiveness of the alleged harasser's actions when the plaintiff's conduct involved people and circumstances wholly distinct from those involved in the harassment). The link, then, between sending crude emails (to Ezeani and perhaps Wyatt) and welcoming physical sexual advances (from Brownlee) is tenuous. To be sufficiently probative to clear the hurdle set by Rule 412, a stronger nexus is necessary. Cf. Stampf v. Long Island R. Co., 761 F.3d 192, 196, 203 (2d Cir. 2014) (finding evidence of an alleged victim's sexually provocative touching of fellow employees probative because of similarities between the victim's behavior and the complained-of behavior); Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 856 (1st Cir. 1998) (affirming district court's admission of specific "evidence concerning plaintiff's allegedly flirtatious behavior toward [the defendant] . . . to determine if [defendant's] advances were in fact 'unwanted'").

On the other hand, the evidence is likely to be prejudicial. Again, it is intended to show that Smith engaged in "lewd behavior" rife with "sexual references," Defs.' Pretrial Stmt. at 4–5, and by extension that she willingly participated in "sexual . . . horseplay" and a physical relationship with Brownlee, Defs.' Opp'n at 3. The evidence's value lies in its tendency to undermine Smith's reputation by portraying her as vulgar and perhaps promiscuous. This invites

7

precisely the type of "stereotypical thinking" that Rule 412 aims to "safeguard[] the [alleged] victim against."  Fed. R. Evid. 412 advisory committee notes to 1994 amendments.

The emails and related testimony add very little to the issues that the jury must decide; essentially, this evidence asks the jury to conclude that sending crude videos by email to one or more people at her place of employment—but, notably, not to her alleged harasser—made it more likely that Smith welcomed sexual advances from Brownlee.  Such a meager showing of probative value, paired with the clear prejudicial effect of presenting evidence of Smith's sexual predisposition, leads the Court to conclude that defendants have not carried their burden under Rule 412(b)(2).  See, e.g., Rodriguez-Hernandez, 132 F.3d at 856 (finding that the district court's exclusion of evidence of the plaintiff's sexual predisposition in a sexual harassment case "struck an acceptable balance between the danger of undue prejudice and the need to present the jury with relevant evidence, particularly in light of Rule 412's special standard of admissibility").[3]  Accordingly, plaintiff's motion is granted.

### III. CONCLUSION

For the foregoing reasons, defendants second and third motions in limine and plaintiff's motion in limine are all granted.  A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: July 12, 2019

---

[3] While not a subject of the motions in limine presently before the Court, one of plaintiff's exhibits, "Picture of George Brownlee's penis 10/08/2008," Pl.'s Ex. List [ECF No. 158] at 2, has been discussed during proceedings in this case and characterized as similar in nature to defendants' exhibits 1–4 and the related testimony.  However, defendants' evidence is subject to Rule 412 considerations because defendants seek to use it against an alleged victim of sexual misconduct.  See Fed. R. Evid. 412 advisory committee notes to 1994 amendments (explaining the rule's purpose of providing safeguards for victims of sexual misconduct).  No rule of evidence provides comparable protections for alleged perpetrators of sexual misconduct.  To the extent that this outcome treats the parties unequally, it reflects the clear and intentional policy choice manifested in Rule 412.

8